UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JONES, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, BRYAN COX, PETER THEODORE, DAVID SALGADO, AND ROCCO PRUGER, <br><br> Defendants. | No. 23 CV 4975 <br><br> Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Jones filed this 42 U.S.C. § 1983 action [1] alleging that his Fourth and Fourteenth Amendment rights were violated by Chicago Police Department ("CPD") Officers Bryan Cox, Rocco Pruger, David Salgado, and Peter Theodore ("the officers"). He also brings two claims against the City of Chicago ("the City"): one for malicious prosecution under Illinois law and one under *Monell v. City of New York*, 436 U.S. 659 (1978). The City moves to dismiss plaintiff's complaint. [23]. The officers join the motion. [25], [26]. For the reasons set forth below, the Court denies defendants' motion in part and grants it in part.

**I.     Legal Standards**

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. Of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Dismissal is warranted only if the allegations, taken as

true (as the Court does in the section that follows), do not state a plausible claim for relief. *Id.*

The complaint must also give defendants fair notice of the claim and its grounds: It must name the plaintiff and the defendants, state the nature of plaintiff's grievance, and lend a "few tidbits" that allow the defendant to investigate plaintiff's claims. *Id.* (citing Fed. R. Civ. P 8(a)(2)).

## II. Factual Background

The officers arrested plaintiff on March 31, 2015, ostensibly for possessing drugs. [1] ¶¶ 3, 5, 13. They had neither a warrant for plaintiff's arrest nor probable cause to believe plaintiff possessed drugs. *Id.* ¶¶ 6, 13.

The officers then fabricated a story to justify plaintiff's arrest and detention. *Id.* ¶ 7. Per the agreed-upon fabricated story, the officers observed plaintiff selling drugs. *Id.* ¶ 8. When the officers approached plaintiff, he dropped the drugs and fled, and then admitted to selling drugs. *Id.*

One or more of the officers then prepared official police reports of this fabricated story. *Id.* ¶¶ 9–10. One or more of the officers attested to this fabrication in the police reports. *Id.* ¶ 9. One or more of the officers conveyed the fabricated story to prosecutors. *Id.* Because plaintiff knew the jury would likely believe the officers' fabricated story, he pled guilty to possessing drugs and was sentenced to three years in prison. *Id.* ¶¶ 13–15.

After plaintiff served this sentence, he learned that two of the defendant officers had reported arresting and transporting another man at the same time they

were allegedly arresting plaintiff. *Id.* ¶¶ 11, 12, 17. Realizing that the two stories were irreconcilable, plaintiff moved to vacate his conviction. *Id.* ¶¶ 12, 17, 18. On August 26, 2022, a state court vacated plaintiff's conviction, granted the prosecution's request to *nolle prosequi* the case, and on December 2, 2022, granted plaintiff a certificate of innocence. *Id.* ¶¶ 18–20. Plaintiff filed this complaint on July 31, 2023. [1].

III. Analysis

A. Group Pleading

Defendants argue that because plaintiff does not identify the specific role played by each officer in his allegations, his complaint engages in improper "group pleading" and runs afoul of the notice requirement in Federal Rule of Civil Procedure 8(a). [23] at 5 ("Group pleading of this type is not acceptable as plaintiff provides no clues as to whether each defendant actually engaged in the alleged conduct, without making clear that the allegations are against all the defendants.").

So long as the complaint provides enough detail to put defendants on notice of plaintiff's claims, "group pleading" does not flout Rule 8. *See Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). At the pleading stage, a plaintiff in a § 1983 case need not "connect every single alleged instance of misconduct in the complaint to every single specific officer," but must "generally name the 'persons responsible for the problem.'" *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (citations omitted); *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so

3

sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

Here, plaintiff names the persons responsible for the problem. He alleges that all four officers arrested him,[1] [1] ¶ 5; that none of the officers had an arrest warrant, believed that an arrest warrant existed, observed plaintiff committing any offense, or received any information indicating that plaintiff had committed an offense, *id.* ¶ 6; that, following his arrest, all four officers fabricated a story to justify plaintiff's arrest and effectuate his prosecution, *id.* ¶ 7; that in this fabricated story, all four officers falsely claimed that they observed plaintiff selling drugs and dropping the drugs while fleeing from the officers, and that plaintiff eventually admitted to the officers that he had been selling drugs, *id.* ¶ 8; and that all four officers wrote reports regarding plaintiff's arrest, *id.* ¶ 10.

Plaintiff also alleges that "[o]ne or more of the officer[s]" prepared official police reports conveying the false allegations and attested to those false allegations, and that "[o]ne or more of the officer[s]" communicated these false allegations to prosecutors. *Id.* ¶ 9.

The question is whether these allegations provide sufficient detail to put the defendants on notice of plaintiff's claims. They do. The officers know that plaintiff has accused each of them of detaining him without probable cause, fabricating evidence against him, and conspiring to do so. This level of detail gives the four officers fair notice of plaintiff's claims. *See Robles*, 354 F. Supp. 3d at 877 (finding a complaint

---

[1] Allegations against "the Defendants" adequately allege personal involvement against *all* defendants—here, all four officers. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009).

4

sufficient when it adequately identified the persons responsible for plaintiff's claim and alleged what they did, as discovery would "permit the defendants to flesh out the particulars of the plaintiff's contentions concerning their participation in the scheme").

Because plaintiff did not engage in impermissible group pleading, the Court next evaluates his claims individually.

### B. False Arrest

Plaintiff's complaint cannot proceed entirely: His § 1983 claim for false arrest comes several years too late.

The two-year statute of limitations for a false arrest claim begins when a plaintiff is brought before a judge pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Because neither party makes clear when exactly that occurred, the Court assumes that plaintiff was brought before a judge shortly after his arrest. *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1070 (N.D. Ill. 2022) (assuming the same). That means the statute of limitations for plaintiff's false arrest claim began running on March 31, 2015, the day he was arrested, and expired on March 31, 2017. *See Wallace*, 549 U.S. at 397; *Walker*, 596 F. Supp. 3d at 1071 (in Illinois, false arrest claims must be filed within two years of plaintiff's detention, even if plaintiff's conviction is later terminated in his favor); *Stubbs v. City of Chicago*, 616 F. Supp. 3d 793, 800 (N.D. Ill. 2022) (same). Plaintiff filed his complaint on July 31, 2023—more than six years too late.

5

Plaintiff concedes that his claim is time-barred. *See* [31] at 9 ("Plaintiff's counsel is well aware of *Wallace v. Kato*, 549 U.S. 384 (2007) and *does* seek to raise a time-barred claim.") (emphasis added). Even without that concession, plaintiff's complaint makes that point plain as well. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (dismissal is appropriate when plaintiff's complaint makes clear that his claim is untimely).[2] Because this flaw cannot be cured by repleading, plaintiff's false arrest claim is dismissed with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

### C. Evidence Fabrication

Plaintiff claims he was unlawfully detained before his conviction, based on fabricated evidence, in violation of the Fourth Amendment. [1] ¶¶ 7, 32, 33. To state a claim of unlawful detention, plaintiff must allege that (1) he was detained, (2) without probable cause, and (3) the criminal proceedings terminated in his favor. *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1070 (7th Cir. 2018); *see also Patrick v. City of Chicago*, 974 F.3d 824, 834–35 (7th Cir. 2020) ("A claim for … pretrial detention based on fabricated evidence sounds in the Fourth Amendment

---

[2] The Court notes that under *Heck v. Humphrey*, 512 U.S. 477 (1994), a claim under § 1983 generally does not accrue if it would necessarily imply the invalidity of the related criminal conviction. Here, plaintiff may have argued (but did not) that his false arrest claim could not have accrued until his conviction was vacated and he was granted a certificate of innocence. But even if plaintiff had advanced this argument, courts take the view that claims of false arrest are not subject to *Heck's* favorable accrual rule. *Olson v. Cross*, 714 F. Supp. 3d 1034, 1058 n.16 (N.D. Ill. 2024); *Walker*, 596 F. Supp. 3d at 1069–71. To properly raise a false arrest claim in this situation, plaintiff should have raised his claim within the two-year limitations period, and then—if it was dismissed under *Heck*—re-filed it when he later succeeded in overturning his conviction. *See Jackson v. City of Chicago*, 2024 WL 1142015, at *8–9 (N.D. Ill. Mar. 15, 2024).

6

right to be free from seizure without probable cause.").[3] Here, plaintiff sufficiently alleges that (1) the officers caused him to be detained, [1] ¶¶ 5, 7, 13, 15, 16; (2) without probable cause, as the evidence against him was fabricated, *id.* at ¶¶ 6, 8, 9, 10; and (3) a state court vacated his conviction and granted him a certificate of innocence, *id.* at ¶¶ 19, 20. Defendants' motion to dismiss the Fourth Amendment-based version of this claim is therefore denied.

Plaintiff separately claims that the officers violated his Fourteenth Amendment right to due process when they fabricated the evidence that caused him to plead guilty. [1] ¶¶ 14–16, 41. *See Walker*, 596 F. Supp. 3d at 1072 (explaining that an evidence-fabrication claim brought under the Fourteenth Amendment differs from an evidence-fabrication claim brought under the Fourth Amendment and that the former claim stems from "the use of false evidence to convict someone, which comprises a violation of the right to a fair trial under the Due Process Clause").[4]

Defendants argue that the complaint "fails to allege … how the officers actually deprived [plaintiff] of the due process afforded at trial because he opted to plead guilty." [33] at 3–4. The Court disagrees with this position based on the analysis set forth in, among other cases, *Mendoza v. City of Chicago*, No. 23-CV-2441, 2024 WL

---

[3] Unlike his false arrest claim, plaintiff's pretrial detention claim is timely (and defendants do not suggest otherwise). Plaintiff's pretrial detention claim "attacks the whole prosecution" and comes less than two years after the favorable termination of his prosecution. *See Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1268 (N.D. Ill. 2021) (unlawful detention claims that challenge the integrity of a criminal prosecution accrue after the favorable termination of those proceedings).

[4] This claim, too, is timely, as it was filed less than two years after the court granted the prosecution's request to *nolle prosequi*. *Dukes v. Washburn*, 600 F. Supp. 3d 885, 894 (N.D. Ill. 2022); [1] ¶¶ 18–20.

1521450, at *2 (N.D. Ill. Apr. 8, 2024). As *Mendoza* explained, "although the Seventh Circuit has not specifically addressed this issue, … a review of Seventh Circuit and Northern District jurisprudence compels the conclusion that a criminal defendant's due process rights are violated when fabricated evidence is used to convince a criminal defendant to enter a guilty plea." *Mendoza*, 2024 WL 1521450, at *2–*3. *Accord In re Watts Coordinated Pretrial Proc.*, 19-CV-1717, 2022 WL 8468206, at *7 (N.D. Ill. Oct. 14, 2022) ("Any reading to the contrary would reward egregious deliberate misconduct from state actors by making conviction following trial the only pathway to vindicate constitutional violations.").

So, to properly plead his Fourteenth Amendment claim, plaintiff must allege that defendants used fabricated evidence that they knew to be false to convince him to plead guilty. *Dukes*, 600 F. Supp. 3d at 899. Here, plaintiff alleges that the officers' fabrication of evidence—namely, their concoction of a story implicating him in a drug sale—convinced him to plead guilty. [1] ¶¶ 14–16. Defendants' motion to dismiss this claim is therefore denied and plaintiff's Fourteenth Amendment claim may proceed.[5]

### D. Failure to Intervene and Conspiracy

Plaintiff posits two derivative claims: that the officers failed to intervene to prevent the violations of his constitutional rights, *id.* ¶ 9, and that the officers

---

[5] In his response to defendants' motion to dismiss, plaintiff notes that he "brings claims against these officers … under the Due Process Clause of the Fourteenth Amendment for causing his deprivation of liberty after conviction." [31] at 8. If this language is intended to refer to some Fourteenth Amendment claim that is distinct from plaintiff's fabrication-of-evidence claim, plaintiff does not make that point clear in either his complaint [1] or his response [31].

8

conspired to violate those rights, *id.* ¶ 7. Defendants attack these claims on numerous grounds, only one of which has merit.

First, defendants argue that failure to intervene claims "have no basis in the Constitution." [23] at 7–8. But the Seventh Circuit disagrees. Its precedent "firmly establishes" their viability. *See Blackmon v. City of Chicago*, 700 F. Supp. 3d 617, 649–650 (N.D. Ill. 2023) (citing *Patrick v. City of Chicago*, 81 F.4th 730, 737–38 (7th Cir. 2023)).

Alternatively, defendants argue that both derivative claims must be dismissed because plaintiff failed to show a viable underlying constitutional claim. [23] at 7. But as discussed above, plaintiff's underlying constitutional claims—save the untimely false arrest claim—*are* viable.

Still, the derivative claims cannot wholly survive. Plaintiff's failure-to-intervene claim has been pled with insufficient specificity. In Paragraph 9 of his complaint, plaintiff alleges, three separate times, that "one or more of the officer defendants" committed a particular unconstitutional act and that "each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights." [1] ¶ 9(a)-(c). In each instance, however, plaintiff does not specify which officer(s) committed the act and which officer(s) failed to intervene. This same formulation proved insufficient in *Smith v. Village of Dolton*, No. 09-CV-6351, 2010 WL 744313 (N.D. Ill. Feb. 25, 2010). There, the plaintiff sought to advance a failure-to-intervene claim by pleading: "On information and belief, one or more of the Defendant OFFICERS were aware of the misconduct of his fellow officers with respect

9

to PLAINTIFF, had a reasonable opportunity to intervene to prevent it, but failed to do so." *Id.* at *2. The district court dismissed the claim, concluding that "[t]hese allegations simply fail to put any of the Defendants on notice as to whether they are the target of Smith's allegations." *Id.* The same is true here, and so the same outcome—dismissal—is warranted.

The lack of notice with respect to the failure to the intervene claims is especially pronounced given Paragraphs 5–8 and 10 of the complaint. There, plaintiff alleges that all of the officers arrested him without probable cause and participated in fabricating evidence against him. [1] ¶¶ 5–8, 10. But then, in Paragraph 9, he changes the story. There, he alleges that only *some* of the officers participated in each infraction, while the rest looked on but failed to intercede. But for each infraction, which of the officers were the principal actors, and which of the officers were bystanders? They cannot be both. *See Velez v. City of Chicago*, No. 1:18-CV-8144, 2023 WL 6388231, at *15 (N.D. Ill. Sept. 30, 2023) ("[O]ne cannot fail to intervene in one's *own* conduct."); *Dobbey v. Jeffreys*, 417 F. Supp. 3d 1103, 1113 (N.D Ill. 2019) (dismissing failure to intervene claim where plaintiffs "offer[ed] no plausible theory based on failure to intervene" because the relevant defendant "allegedly was the principal bad actor, not a bystander who turned a blind eye").

Plaintiff's § 1983 conspiracy claim fares better.[6] To state this claim, plaintiff must allege that (1) defendants reached an understanding to deprive the plaintiff of

---

[6] Plaintiff does not make clear whether his conspiracy claim is pursuant to § 1983 or state law. The Court assumes he intended it to be a § 1983 conspiracy claim, given the context of his allegations, and because he specifically noted that his malicious prosecution claim was made pursuant to state law. [1] ¶ 42.

his constitutional rights, and (2) those defendants were willful participants in the joint activity. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 817 (N.D. Ill. 2021). A complaint must at least identify the conspiracy's members, purpose, and approximate dates. Bare conclusions of a conspiracy cannot survive a motion to dismiss: the plaintiff must demonstrate that the defendants somehow reached an understanding to deny plaintiff his constitutional rights, and that each defendant knew the scope of that agreement. *Cooney v. Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009); *Fulton*, 547 F. Supp. 3d at 817–18.

Here, plaintiff alleges that the officers (1) "conspired, confederated, and agreed to fabricate a false story to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted," and that (2) the officers took overt acts in furtherance of that conspiracy when they filed and attested to false reports. [1] ¶¶ 7, 9. Read in the light most favorable to plaintiff, with all reasonable inferences drawn in his favor, plaintiff has alleged a pattern of evidence fabrication, joined by each of the officers, that extended throughout his prosecution.

In *Geinosky v. City of Chicago*, the Seventh Circuit explained that "[i]f several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, [it] will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." 675 F.3d 743, 749 (7th Cir. 2012). Here, plaintiff has alleged that four individual officers (1) all falsely claimed that plaintiff sold drugs and fled from the police, before confessing to his crime, and (2) all memorialized this false narrative in

11

multiple police reports and repeated it to prosecutors. Plaintiff further alleges that at least two of the individual officers chose to propagate this false narrative despite having been involved in the arrest of another individual, at a different location, at the same time they purportedly witnessed plaintiff sell drugs. Accepting plaintiff's allegations as true, "[i]t is a challenge to imagine a scenario in which [such fabrication] would not have been the product of a conspiracy." *Id*. Because plaintiff's allegations allow the Court to plausibly infer that the officers conspired to violate his constitutional rights, his conspiracy claim may proceed.

### E. Malicious Prosecution

Plaintiff states a claim for malicious prosecution against the City under Illinois law. [1] ¶ 42. To state a malicious prosecution claim in Illinois, plaintiff must allege that: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceedings were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 921–22 (N.D. Ill. 2014) (citations omitted). Here, plaintiff alleges (1) that the officers caused him to be detained and prosecuted, [1] ¶¶ 5–7; (2) that no probable cause existed, *id.* ¶ 6; (3) that the officers maliciously fabricated evidence to further his detention and prosecution, *id.* ¶¶ 7, 8; (4) that his conviction was vacated and he was granted a certificate of innocence, *id.* ¶¶ 19, 20; and (5) that, as a result of this prosecution, he was deprived of his Fourth and Fourteenth Amendment rights, *id.* ¶ 41.

In response to these allegations, defendants rehash their group-pleading argument and contend that plaintiff "fails to state what employee … took any actions sufficient to substantiate this claim" and that "if no individual is identified as having committed a malicious prosecution violation there can be no liability that attaches to the city." [23] at 4. But as already explained, plaintiff makes clear that the four officers each had a role in detaining him without probable cause and fabricating evidence against him, leading to his prosecution and conviction. Plaintiff's malicious prosecution claim against the City may therefore proceed.

### F. *Monell*

Defendants contend that the complaint does not plead a plausible municipal liability claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). To establish a city's liability under *Monell,* plaintiff must show that (1) he suffered a deprivation of a federal right, (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decisionmaker with final policymaking authority for the city, which (3) proximately caused his injury. *Ovadal v. City of Madison, Wisc.,* 416 F.3d 531, 535 (7th Cir. 2005).

Here, plaintiff alleges that the City's widespread custom of a "code of silence" encouraged officers to fabricate evidence, leading to the deprivation of his Fourth and Fourteenth Amendment rights. [1] ¶ 41. To determine whether plaintiff sufficiently pleaded a widespread custom theory of *Monell* liability, the Court looks to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or

13

custom." *Williams*, 315 F. Supp. 3d at 1079. Generally speaking, a plaintiff must plead more than a single incident of wrongdoing to allege *Monell* liability; the widespread custom alleged must "permeate[] a critical mass of [the] institutional body." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). This requirement aims to ensure that the plaintiff has identified a true citywide custom, rather than just one isolated event. *Walker*, 596 F. Supp. 3d at 1074.

In addition, plaintiff must allege a pattern of constitutional violations similar to those he suffered. The comparators need not be perfect but must be similar enough to show a widespread practice. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 657 (7th Cir. 2021); *Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, 20 C 0292, 2021 WL 767619 at *10 (N.D. Ill. Feb. 26, 2021) (the similar incidences do not need to be identical, but must be "sufficiently similar to support an inference of a broader pattern"). For example, the plaintiff in *Arquero v. Dart* alleged that he knew of "at least seven individuals" who, like him, were detained without cause because of defendants' policy or practice of knowingly using faulty electronic monitoring equipment. 587 F. Supp. 3d 721, 729 (N.D. Ill. 2022). And in *Cosby v. Rodriguez*, the plaintiff, a protestor who alleged CPD officers used excessive force against him in violation of his Fourth Amendment rights, sufficiently alleged a widespread pattern of similar constitutional violations when he pointed to CPD's history of employing excessive and retaliatory force against other protestors. 711 F. Supp. 3d 983, 1010–11 (N.D. Ill. 2024).

14

Here, Plaintiff alleges that the City has "known and encouraged a 'code of silence' among its police officers that required police officers to remain silent about police misconduct," that officers are trained to obey this "code of silence," and that officers are punished if they break the "code of silence." [1] ¶¶ 22, 23. To support this allegation, plaintiff references:

- a Northern District of Illinois case involving misconduct by an off-duty officer and alleging a "de facto [CPD] custom or policy of impeding and interfering with police misconduct investigations," *id.* ¶ 25; *Obrycka v. City of Chicago*, 2012 WL 601810, at *7 (N.D. Ill. Feb. 23, 2012);

- a statement from former Mayor Rahm Emmanuel "made in the context of an excessive force case involving a police shooting," *id.* ¶ 26; *see Milan v. Shulz*, 2022 WL 1804157 at *5 (N.D. Ill. June 2, 2022) (quoting *Page v. City of Chicago*, 2021 WL 365610, at *3 (N.D. Ill. Feb. 3, 2021));[7]

- excerpts from findings made in 2016 by the City's Police Accountability Task Force as well as findings from a 2017 report by the United States Department of Justice following its investigation of CPD that was "delivered specifically in the context of excessive force," *id.* ¶¶ 27–29; *Walker*, 596 F. Supp. 3d at 1075; and

- quotes from two former CPD superintendents acknowledging the existence of a code of silence, *id.* ¶ 30.

If these points of reference have anything to do with the kind of evidence fabrication that caused plaintiff's Fourth and Fourteenth Amendment injuries, the complaint does not plausibly explain the connection. He fails to "specify what about those citations demonstrate a widespread policy or custom of the fabrication of evidence, in contrast to other forms of misconduct (such as fatal shootings) or a 'code

---

[7] *See also Walker*, 596 F. Supp. 3d at 1075 ("[I]n then-Mayor Rahm Emanuel's December 2015 interview, his statement concerning a 'code of silence' within the Chicago Police was delivered specifically in the context of excessive force.")

15

of silence' by Chicago Police officers." *Walker*, 596 F. Supp. 3d at 1074–75; *see also Tillman v. Burge*, 813 F. Supp. 2d 946, 978 (N.D. Ill. 2011) ("In establishing the existence of such a policy or practice, it is insufficient to splatter-paint a picture of scattered violations through collateral accusations of marginally related incidents.") (cleaned up). Merely alleging that a "code of silence" exists does not allow the court to reasonably infer a custom or practice of evidence fabrication and Fourth and Fourteenth Amendment injuries akin to plaintiff's.[8]

Providing the number of complaints filed against each of the officers does not fill the gap. [1] ¶¶ 33–34. Plaintiff does not specify the nature of these complaints or explain how they relate to his own Fourth and Fourteenth Amendment injuries. He thus provides no information that allows the Court to infer these complaints involve injuries similar to plaintiff's own.

Where a plaintiff has alleged that officers fabricated evidence against him pursuant to the "code of silence" but there is "nothing in the complaint that allows the Court to infer there was a widespread practice of … fabrication of evidence," it is appropriate for the Court to dismiss plaintiff's *Monell* claim without prejudice. *See Austin v. City of Chicago*, No. 18 C 7268, 2019 WL 4750279 at *4 (N.D. Ill. Sept. 30, 2019).

---

[8] In *Shields v. Chicago,* the plaintiff pointed to some of the same pieces of evidence that plaintiff here relies upon in successfully advancing a *Monell* claim based on a "code of silence" within CPD. No. 17 C 6689, 2018 WL 1138553 at *4 (N.D. Ill. March 2, 2018). The difference, though, is that in *Shields*, the plaintiff "alleged that the Police Accountability Task Force Report and January 2017 DOJ Report highlight the deficiencies in relation to the *CPD's use of excessive force that are sufficiently similar to Plaintiff's excessive force allegations*—raising a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom." *Id.* (emphasis added).

16

## IV. Conclusion

For these reasons, the Court grants defendants' motion to dismiss in part and denies it in part.

Plaintiff's time-barred false arrest claim is dismissed with prejudice. His failure to intervene and *Monell* claims are dismissed without prejudice, and on or before December 12, 2024, plaintiff may file an amended complaint that cures the deficiencies with these claims, as described above. Plaintiff's Fourth Amendment pretrial detention, evidence-fabrication, conspiracy, and malicious prosecution claims may proceed.

                                                            Georgia N. Alexakis
                                                            United States District Judge

Date: November 12, 2024